# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

GARLAND REYNOLDS, JR., as          :
Administrator of the Estate of      :
MATTHEW JOHN REYNOLDS               :
and BONNIE J. REYNOLDS and          :
GARLAND REYNOLDS, JR., as          :          CIVIL ACTION NO.
Surviving Parents of MATTHEW        :          2:04-CV-0106-RWS
JOHN REYNOLDS, deceased,            :
BONNIE J. REYNOLDS,                 :
Individually, and GARLAND           :
REYNOLDS, JR., Individually and     :
as Husband of Bonnie J. Reynolds,   :
                                    :
         Plaintiffs,                :
                                    :
     v.                             :
                                    :
GENERAL MOTORS                      :
CORPORATION,                        :
                                    :
         Defendant.                 :

## ORDER

This case comes before the Court for resolution of Plaintiffs' Motion to

Compel Answers to Plaintiffs' Request for Production of Documents and

Interrogatories Concerning Amounts Paid to Expert Witnesses [96], Plaintiffs'

Motion in Limine [103], Defendants' Motion to Exclude the Opinions of

Patricia Davis [104], Defendants' Motion to Exclude the Testimony of Charles

Benedict [107], and Defendants' Motion for Summary Judgment [105]**.**  After reviewing the entire record, the Court enters the following Order.

## Background[1]

This case arises from a vehicle rollover incident involving a 1995 Chevy Blazer.  The incident occurred on Interstate 985 in Hall County, Georgia on June 3, 2002.  At the time of the accident, Plaintiff Bonnie Reynolds was operating the Blazer, and her son Matthew Reynolds was a passenger in the front seat of the vehicle.  Another vehicle, operated by Mr. William Merritt, Jr., who is not a party to this action, struck the Reynolds' vehicle twice.  After the collision, Mrs. Reynolds lost control of the Blazer, and it rolled multiple times.  During the incident, the vehicle sustained  roof crush on the passenger side, and the front passenger door appears to have opened.  Matthew Reynolds was ejected from the vehicle during this rollover, and as a result of the accident Matthew Reynolds sustained serious injuries.  He died as a result of these injuries the following day.

---

[1]These facts are taken from the Plaintiffs' Complaint and from the Plaintiffs' response to Defendant's Statement of Undisputed Material Facts.  The Court makes no findings as to the facts stated herein.

Plaintiffs filed suit alleging that the 1995 Chevy Blazer was defective and that Defendant General Motors Corporation ("GM") was negligent in designing, manufacturing, and selling the vehicle. Plaintiffs claim the Blazer had insufficient stability to prevent a rollover during emergency steering maneuvers and that the vehicle suffered from insufficient crashworthiness in roof structure and seat belt and door design. Plaintiffs also contend that GM supplied defective or insufficient warnings of the dangers associated with these alleged defects. Plaintiffs seek compensatory damages for the pain and suffering and wrongful death of Matthew Reynolds. Mrs. Reynolds also seeks damages for her own injuries, and Mr. Reynolds seeks damages for loss of consortium. Plaintiffs also seek punitive damages.

**Discussion**

**I.     Motion to Compel**

The Court first turns to Plaintiffs' Motion to Compel Answers to Plaintiffs' Request for Production of Documents and Interrogatories Concerning Amounts Paid to Expert Witnesses [96]. Plaintiffs wish to obtain information about how much Defendant GM has paid to its expert witnesses

and expert firms over the course of a seven year period.[2]  According to

Defendant, each of its experts has already produced a list of the cases in which

the expert testified during the previous four years, the number of cases in which

each had worked for GM and other automobile manufacturers, information

regarding billing rates, and the number of hours that each expert has worked on

this case.

Rule 26 of the Federal Rules of Civil Procedure governs the scope of

discovery in federal civil actions.  That Rule provides:

> Parties may obtain discovery regarding any matter,
> not privileged, that is relevant to any party's claim or
> defense . . . .  For good cause, the court may order
> discovery of any matter relevant to the subject matter
> involved in the action.  Relevant information need not
> be admissible at the trial if the discovery appears
> reasonably calculated to lead to the discovery of
> admissible evidence.

FED. R. CIV. P. 26(b)(1).  With respect to the discovery of information

pertaining to expert witnesses retained to testify at trial, a party may obtain a list

of all other cases in which the expert testified over the previous four years and a

---

[2]This seven year span includes the four years prior to the commencement of the
litigation and the three years that have elapsed since that time.

4

AO 72A
(Rev.8/82)

statement of the compensation to be paid for expert work on the case.  FED. R. CIV. P. 26(a)(2)(B).

Discovery rules "are to be accorded a broad and liberal treatment." Hickman v. Taylor, 329 U.S. 495, 507-08 (1947).  However, the scope of discovery must yield to some practical limitations.  See id. ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries.").  When a request for discovery is challenged, the onus is on the party resisting discovery to demonstrate specifically how the request is unreasonable or otherwise overly burdensome.  Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550, 1559 (11th Cir. 1985).

In their interrogatories, Plaintiffs asked for the total amount of money paid by GM to various experts and consulting firms for work performed on behalf of GM or a law firm working on behalf of GM over the past seven years. Defendant agreed to make available for inspection documents reflecting the billings of individual experts for work related to this case, but Defendant objected to the extent that the interrogatories asked for anything further. Plaintiffs also requested the production of copies of bills paid by GM to various experts and consulting firms for all work performed for GM over the past seven

5

years.  Again, Defendant agreed to make available for inspection documents reflecting the billings to date of individual consultants for work on this case, but Defendant objected to the extent that the requests for production of documents asked for anything further.

Whether an expert has an ongoing relationship with a party and whether the expert earns a significant amount of income from testifying on behalf of that party is relevant and discoverable information.  Collins v. Wayne Corp., 621 F.2d 777, 783 (5th Circ. 1980); Allstate Ins. Co. v. Boecher, 733 So. 2d 993, 997 (Fla. 1999); Wrobleski v. De Lara, 727 A.2d 930, 934-38 (Md. 1999). Such information is certainly relevant to a witness's credibility and may be useful in the cross-examination of an expert witness.  However, the extended period for which Plaintiffs seek this information and the labor-intensive request for documentation of fees paid by GM to its experts are unduly burdensome.

While Plaintiffs are entitled to discover through their interrogatories how much money Defendant's experts and consulting firms have made by testifying on behalf of GM for a reasonable period of time, they are not entitled to compel the production of copies of invoices for expert fees paid by GM, as such a request seems unduly burdensome to the Court.  Therefore, Plaintiffs' Motion

6

to Compel [96] is **GRANTED IN PART** and **DENIED IN PART**.  Defendant

shall answer Interrogatory No. 1 through Interrogatory No. 9 for the period

from Jan 1, 2002 through December 31, 2006.  To the extent that Plaintiffs

request the production of copies of bills paid by GM to consultants and

consulting firms, Plaintiffs' request is denied.

## II.     Motion in Limine

Federal Rule of Evidence 401 defines relevant evidence as that "having

any tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be

without the evidence."  FED. R. EVID. 401.  Rule 402, in turn, provides that

relevant evidence is generally admissible, but that "[e]vidence which is not

relevant is not admissible."  FED. R. EVID. 402.  Rule 403 provides that even

relevant evidence may be excluded if "its probative value is substantially

outweighed by the danger of unfair prejudice, confusion of the issues, or

misleading the jury, or by consideration of undue delay, waste of time, or

needless presentation of cumulative evidence."  FED. R. EVID. 403.  However,

the exclusion of evidence under this rule "is an extraordinary remedy to be used

sparingly."  United States v. Griffin, 778 F.2d 707, 709 (11th Cir. 1985).

Finally, courts are not permitted to consider the weight or sufficiency of evidence when determining relevancy.  <u>Robinson v. Runyon</u>, 149 F.3d 507, 512 (6th Cir. 1998).

Here, Plaintiffs have filed a Motion in Limine [103], wishing to exclude any reference at trial to "any use of alcohol or alcohol impairment by William Merritt, Jr.," who was the driver of the vehicle that struck the Plaintiffs' Blazer prior to the rollover at issue in this action.  (Pl.'s Br. in Supp. of Mot. in Limine Dkt. No. [103] at 1.)  Plaintiffs first argue under Federal Rule of Evidence 402 that any evidence of Mr. Merritt's alcohol consumption or impairment is irrelevant and should be excluded.  They go on to assert that, if the Court were to find Mr. Merritt's alcohol impairment relevant to the issue of causation, the evidence should still be excluded because it would be unfairly prejudicial, would confuse the issues, would mislead the jury, and would waste judicial resources.

In response, Defendant argues that Mr. Merritt's intoxication is highly relevant to the issue of causation in this case.  Defendant notes that an unforeseeable intervening criminal act is generally treated as the sole proximate cause of an injury under Georgia law.  <u>See</u> <u>Grijalva v. United States</u>, 289 F.

8

Supp. 2d 1372, 1381 (M.D. Ga. 2003).  Defendant asserts that Mr. Merritt's

intervening criminal actions caused the rollover and Plaintiffs' resulting

injuries.  The Court finds that Mr. Merritt's consumption of alcohol and his

conviction for driving under the influence of alcohol are relevant to the issue of

proximate cause.  The Court further concludes that the probative value of Mr.

Merritt's alcohol consumption and impairment is not substantially outweighed

by the potential dangers of prejudice, confusion, or delay.  For these reasons,

Plaintiffs' Motion in Limine [103] is hereby **DENIED**.

## III.    Motions to Exclude Expert Testimony

Defendant challenges the admissibility of the testimony of Dr. Patricia

Davis and Dr. Charles Benedict, arguing that their testimony does not meet the

requirements of Federal Rule of Evidence 702.  Rule 702 provides:

> If scientific, technical, or other specialized knowledge
> will assist the trier of fact to understand the evidence
> or to determine a fact in issue, a witness qualified as
> an expert by knowledge, skill, experience, training, or
> education, may testify thereto in the form of an
> opinion or otherwise, if (1) the testimony is based
> upon sufficient facts or data, (2) the testimony is the
> product of reliable principles and methods, and (3) the
> witness has applied the principles and methods
> reliably to the facts of the case.

FED. R. EVID. 702.  The Eleventh Circuit has synthesized the existing rules into

a three-part inquiry, instructing courts to consider whether:

> (1) the expert is qualified to testify competently
> regarding the matters he intends to address; (2) the
> methodology by which the expert reaches his
> conclusions is sufficiently reliable as determined by
> the sort of inquiry mandated in Daubert; and (3) the
> testimony assists the trier of fact, through the
> application of scientific, technical, or specialized
> expertise, to understand the evidence or to determine a
> fact in issue.

U.S. v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing City of Tuscaloosa

v. Harcros Chemicals, Inc., 158 F.3d 548, 562 (11th Cir. 1998)).

With regard to the second factor, the Supreme Court explained in

Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993), and

its progeny that courts should serve a gatekeeping function in order to ensure

the reliability of the methods employed by expert witnesses.  The Daubert

inquiry specifically addresses the reliability of an expert's principles and

methods.  Daubert lists factors for courts to consider, including:  (1)"whether

[the theory or technique] can be (and has been) tested," (2) "whether the theory

or technique has been subjected to peer review and publication," (3) "the known

or potential rate of error," and (4) "general acceptance" of the theory in the

10

field.  Daubert, 509 U.S. at 593-94.  Additional factors courts have used to

assess reliability of expert methods include whether the opinion naturally

flowed from an expert's research or was developed specifically for litigation,

Daubert v. Merrell Dow Pharmaceuticals, Inc. 43 F.3d 1311, 1317 (9th Cir.

1995); Allison v. McGhan Med. Corp., 184, F.3d 1300, 1321 (11th Cir. 1999);

and whether an expert has improperly extrapolated from a scientifically founded

proposition to an unfounded conclusion.  Allison, 184 F.3d at 1312, 1314.

It is important to note, however, that "expert testimony that does not meet

all or most of the Daubert factors may sometimes be admissible."  U.S. v.

Brown, 415 F.3d 1257, 1268 (11th Cir. 2005).  Indeed, reliability is meant to be

a flexible inquiry for district courts, allowing them to determine which factors

may be relevant and to apply only those factors which the court sees fit.  U.S. v.

Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004).  "The burden of laying the

proper foundation for the admission of the expert testimony is on the party

offering the expert, and admissibility must be shown by a preponderance of the

evidence."  Allison, 184 F.3d at 1306.  However, "the proponent of the

testimony does not have the burden of proving that it is scientifically correct,

but that by a preponderance of the evidence, it is reliable."  Id. at 1312.

11

### A.      Motion to Exclude Opinions of Patricia Davis

First, Defendant has filed a Motion to Exclude the Opinions of Patricia Davis [104].  According to Plaintiffs' Expert Report, Dr. Davis offers opinions regarding the causation of Matthew Reynolds' injuries and his consciousness of pain and suffering from the time of his injuries until his death.[3]  (See Rule 26 Report for P. Davis Dkt. No. [113-4] at 1-2.)

_____

[3]Specifically, Dr. Davis opines:

> It is my professional medical opinion that Matt Reynolds sustained injuries as a result of events in and around a high velocity–high impact motor vehicle accident on June 3, 2003, in Hall County, Georgia.  Further, in my professional medical opinion, Matt Reynolds' injuries were as a result of high velocity–high impact blunt trauma to the right side of his face, skull and forehead.  The injuries included linear and comminuted/displaced fractures of the face, orbit, skull, and skull base, brain tissue damage with hemorrhagic and non-hemorrhagic contusion, and intracranial hematoma evident on the CT scans I have reviewed.  Soft tissue swelling and hemorrhage are also evident on the scalp and extracranial face.  Considering the materials I have reviewed in this case, as well as my experience in neuroradiologic evaluation of persons who have experienced neurologic injury from trauma, it is my professional medical opinion that more likely than not Matt Reynolds' injuries were as a result of the forces of the roof crush of the automobile in which he was a passenger and the forces of striking the pavement when he was ejected from the automobile in which he was a passenger.

(Rule 26 Report for Patricia C. Davis, Dkt No. [113-4] at 1-2.)

Defendant admits that Dr. Davis is qualified as a radiologist; however, Defendant contests Davis's qualifications to offer opinions on injury causation and post-crash consciousness in this case.  First, Defendant argues that Dr. Davis lacks both the formal training and the factual information necessary to formulate opinions regarding the causation of Matthew Reynolds' injuries. (See Def.'s Br. in Supp. of Mot. to Exclude Dkt. No.[104-2] at 6-9.)  But a careful review of the opinions Dr. Davis offers in her affidavit and her deposition shows that she did not attempt to reconstruct the accident.  In fact, when asked by Defendant's counsel about these matters, she readily admitted that accident analysis is not her realm of expertise, and she refrained from making any concrete assertions regarding these matters.  (See, e.g. Dep. of P. Davis at 65.)  Dr. Davis was equally candid about the limitations of her ability to testify as to which of Matthew Reynolds' several head injuries resulted from roof crush versus impact with the road.  Dr. Davis's testimony as to injury causation seems to be limited to whether Matthew Reynolds' injuries are consistent with certain types of forces, and Dr. Davis is qualified to make these judgments, in light of her medical training and professional experience.  The

13

Court concludes that Dr. Davis' opinions as to accident causation shall not be excluded.

Second, Defendant argues that Dr. Davis' opinions concerning Matthew Reynolds' post-injury level of consciousness should be excluded. An opinion on this subject was not disclosed in Dr. Davis' expert report. (See Rule 26 Report for Patricia C. Davis Dkt. No [113-4].) During her subsequent deposition, defense counsel asked Dr. Davis for an opinion on this matter, and she opined that Matthew Reynolds retained some level of conscious awareness following his injuries. (See Dep. of P. Davis at 37-40, 72-75.) Because these opinions were not disclosed in the Rule 26 expert report, they shall be excluded from Dr. Davis's testimony at trial. See FED. R. CIV. P. 26(a)(2)(B) (requiring "a complete statement of all opinions the witness will express and the basis and reasons for them"). For these reasons, Defendant's Motion to Exclude the Opinions of Patricia Davis [104] is hereby **GRANTED IN PART** and **DENIED IN PART**.

### B.     Motion to Exclude Testimony of Charles Benedict

Defendant has also filed a Motion to Exclude the Testimony of Charles Benedict [107]. Defendant argues that Dr. Benedict's background and

14

experience do not qualify him as an expert in seat belt or door systems and that his defect opinions are unreliable.  Defendant further argues that Dr. Benedict's inertial release theory has not been generally accepted within the automotive engineering community and that his research has been litigation-driven. Finally, Defendant asserts that Dr. Benedict's opinions are based upon insufficient information.

Dr. Benedict has a Ph.D. in Mechanical Engineering and is a licensed professional engineer.  He has 35 years of experience in kinematics and dynamics of mechanisms.  He has designed and patented several types of seat belts.  He has studied and tested seat belts and door latches.  He has studied occupant kinematics and has examined vehicle components in crash tests and law suits.  Even though a substantial portion of his experience and research has been related to litigation, he still possesses the requisite knowledge, training, and experience to meet the requirements of Daubert and of Rule 702.  Not only has Dr. Benedict studied concepts relevant to his testimony in an academic setting, but he has also gained the specific experience necessary to qualify as an expert witness by testing and designing the vehicle components at issue.  See FED. R. EVID. 702 ("Nothing in this amendment is intended to suggest that

experience alone–or experience in conjunction with other knowledge, skill,

training or education–may not provide a sufficient foundation for expert

testimony."); see also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 156,

(1999) (stating that "no one denies that an expert might draw a conclusion from

a set of observations based on extensive and specialized experience").  For

these reasons, Dr. Benedict's testimony will not be excluded on these grounds.

Furthermore, Dr. Benedict's testimony regarding the inertial release

theory shall be not be excluded.  Although the Court excluded evidence of the

inertial release theory in a 1999 order, see Stephens v. General Motors Corp.,

No. 1:96-cv-2820-RWS (N.D. Ga. 1999), Plaintiffs have offered substantially

more support for the theory than was offered in the Stephens case, including

documented studies of vehicle rollover incidents in which inertial unlatching

was observed.  (See Steven E. Meyer et al.,"Motor Vehicle Seat Belt Restraint

System Analysis During Rollover" (2003) Dkt. No. [125-9]; Richard Clarke,

"An Analysis of the JDC Buckle's Dynamic Response to Inertial Loading

Conditions in a Vehicle Rollover" (2001) Dkt. Nos. [125-12] to [125-24];

David A. Renfroe, "Rollover Ejection While Wearing Lap and Shoulder

Harness: The Role of the Retractor" (1996) Dkt. No. [125-10].)  Since 1999,

16

there has been substantial testing of inertial unlatching, and the theory has been subject to peer review.  While the theory of inertial release enjoyed very little acceptance within the scientific community eight years ago, it is now the subject of substantial debate within the scientific literature, with many scientists proffering evidence of instances of inertial release, especially in the context of a rollover incident.  The Court concludes based on the sources offered by Dr. Benedict that his methods are reliable and that his testimony on the subject of inertial release shall not be excluded.[4]  Accordingly, Defendant's Motion to Exclude is hereby **DENIED**.

## IV.    Defendant's Motion for Summary Judgment

Defendant has moved for summary judgment on all claims. For the reasons detailed below, the Court concludes that this motion is due to be granted in part and denied in part.

### A.    Summary Judgment Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and

---

[4]The Court notes that other district courts have reached the same conclusion. See, e.g., Christie v. Mazda Motor of Am., Inc., 2006 WL 2128897 (E.D. Tenn. 2006).

AO 72A
(Rev.8/82)

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  The applicable substantive law identifies which facts are material.  Id. at 248.  A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id.  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Id. at 249-50.

18

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).  But, the court is bound only to draw those inferences which are reasonable.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (stating that once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").  With this standard as a foundation, the Court turns to address the merits of Defendants' Motion for Summary Judgment [105].

### B.    Proximate Cause

O.C.G.A. § 51-1-11 provides for strict liability against a manufacturer for personal injuries resulting from an unmerchantable product which was not

19

reasonably suited to its intended use.  O.C.G.A. § 51-1-11(b).  The plaintiff

must establish the existence of a manufacturing defect, a design defect, or a

marketing/packaging defect.  <u>Banks v. ICI Americas, Inc.</u>, 450 S.E.2d 671, 672

(Ga. 1994).  The plaintiff must also prove that the product's condition when

sold was the proximate cause of the plaintiff's injuries.  O.C.G.A. § 51-1-11(b).

In its Motion for Summary Judgment, Defendant first argues that

Plaintiffs cannot prevail because Mr. Merritt's intervening criminal conduct is

the sole proximate cause of the rollover incident and of Plaintiffs' ensuing

injuries.  For this reason, Defendant asserts that it is entitled to summary

judgment on all of Plaintiffs' claims.

Under Georgia law, an unforeseeable intervening criminal act will be

treated as the sole proximate cause of a resulting injury.  <u>Timmons v. Ford

Motor Co.</u>, 982 F.Supp. 1475, 1480-81 (S.D. Ga. 1997).  Defendant points to

Mr. Merritt's unlawful conduct as such an unforeseeable intervening criminal

act.  Defendant contends that there is "simply no way that GM could have

reasonably foreseen such a sequence of events or designed the Blazer in a way

to be injury-proof, particularly given the circumstances."

20

However, the relevant proximate cause inquiry is "whether, as a general matter, the original negligent actor should have anticipated that th[e] general type of harm might result." <u>Smith v. Commercial Transp., Inc.</u>, 220 S.E.2d 446, 448 (Ga. App. 1996). Plaintiffs argue that an accident caused by a third party falls within the general type of foreseeable harm that might result from driving GM's 1995 Chevy Blazer. Because a reasonable jury could find that Defendant could reasonably foresee the possibility of a drunk driver causing an accident with the Chevy Blazer under circumstances similar to those present here, the Court concludes that there is a genuine dispute of material fact on the issue of proximate cause. For these reasons, the Court refuses to grant summary judgment on these grounds.

### C.    Causal Connection Between Defective Door and Injuries

Defendant argues that there is no causal connection between any defect in the vehicle's door and Matthew Reynolds' injuries. Defendant argues that Plaintiffs have failed to meet their burden of proof on the element of causation because a reasonable jury could not find that Matthew Reynolds was actually ejected through the open door of the Blazer. Plaintiffs' accident-reconstruction expert and Plaintiffs' design expert have both opined that Matthew Reynolds

was ejected through the window of the vehicle rather than through the open door.  Defendant's experts agree.  Even though the door appears to have opened during the rollover incident, Plaintiffs have offered no evidence to prove that Matthew Reynolds was ejected through the open door.  The Court concludes that a reasonable jury could not conclude that a possible defect in the Blazer's door actually caused Matthew Reynolds' injuries.  Based on the evidence before the Court, a causal connection simply cannot be made between the alleged defect in the Blazer's door and Matthew Reynolds' injuries.  Therefore, the Court concludes that summary judgment is appropriate on all claims based on the Blazer's allegedly defective door.

### D.    Crashworthiness Defect Claims

As explained above, there are three general types of defect claims that a plaintiff can assert: manufacturing defects, design defects, and labeling or warning defects.  Plaintiffs here appear to assert all three types.[5]

---

[5]While the claims in Plaintiffs' Amended Complaint [84] focus primarily on design defects, Paragraph 11 encompasses manufacturing defects as well.  The Court will address design and manufacturing defect claims together and will address the failure to warn claims separately below.

For manufacturing defect claims, the trier of fact must ask whether the product would have been safe for consumer use had it been manufactured in accordance with the design.  S K Hand Tool Corp. v. Lowman, 479 S.E.2d 103, 108 (Ga. App. 1996).  As one court put it,

> [T]he plaintiff is not required to show negligence by the manufacturer, but must show that the product, when sold, was not merchantable and reasonably suited to the use intended and its condition when sold is the proximate cause of the injury sustained.  It is not necessary for the plaintiff to specify precisely the nature of the defect.  He must show that the device did not operate as intended and this was the proximate cause of his injuries.

Owens v. General Motors Corp., 613 S.E.2d 651, 654 (Ga. App. 2005) (citing Williams v. Am. Med. Sys., 548 S.E.2d 371 (2001)).

For design defect claims, Georgia courts have adopted a "risk-utility analysis" to determine whether a defect exists.  Id. at 673-74.  Under this test, a product has a design defect when "the risks inherent in a product design" outweigh "the utility of the product so designed."  Banks v. ICI Americas, 450 S.E.2d 671, 674 (Ga. 1994).  Relevant factors in the risk-utility analysis include (1) the availability of an alternative safer design, (2) cost trade-offs, (3) tactical market decisions, (4) product development, (5) research/testing demands

23

(technological feasibility), (6) varying corporate management styles, and (7) regulatory restrictions.  Wheat v. Sofamor, S.N.C., 46 F.Supp. 2d 1351, 1361-62 (N.D. Ga. 1999).  It is well-established that an essential factor in this analysis is the assessment of "evidence establishing that at the time the product was manufactured, an alternative design would have made the product safer than the original design and was a marketable reality and technologically feasible."  Owens, 613 S.E.2d at 674-75.  This alternative design factor has been called "the 'heart' of design defect cases."  Banks, 450 S.E.2d at 674.

In this case, Defendant claims that Plaintiffs' roof and seatbelt claims fail because Plaintiffs have presented no expert evidence to support the finding of a defect in these mechanisms.[6]  Defendant states that under Georgia law "expert testimony is required to establish a defect in a product, whether the claims are grounded in strict liability or negligence."  (Def.'s Br. in Supp. of Mot. for Summ. J. Dkt. No. [105-3] at 12.)  This misstatement of the law ignores the line of cases involving "'simple' product defects," which, as Georgia courts have recognized, do not require expert testimony.  Mize v. HJC Corp., 2006 U.S.

---

[6]Defendant also claims that Plaintiffs have failed to prove a defect in the Blazer's door, but the Court need not consider these arguments given the Court's ruling that those claims fail on grounds of causation.

Dist. LEXIS 69201 at *14.  <u>See also</u>, <u>Bishop v. Bombardier, Inc.</u>, 399 F.Supp.

2d 1372, 1382 (M.D. Ga. 2005) ("[E]xpert testimony is not always required to

prove defect."); <u>SK Hand Tool Corp.</u>, 479 S.E.2d 103, 105-07 (Ga. App. 1996)

(holding that products liability cases have no expert testimony requirement).  In

these "simple" defect cases, expert testimony is not required if the facts are

accurately presented to the jury and if the jurors are able to understand and

analyze the facts as an expert witness would.  <u>Salem v. United States Lines Co.</u>,

370 U.S. 31, 35 (1962).  "It has often been held that the existence of a

manufacturing defect in a products liability case may be inferred from

circumstantial evidence."  <u>General Motors Corp. v. Blake</u>, 515 S.E.2d 166, 169

(Ga. App. 1999) (citing <u>Firestone Tire & Rubber Co. v. King</u>, 244 S.E.2d 905

(1978)).

  Plaintiffs argue that their roof defect claim is supported by technical

literature, internal industry documents, and the fact of roof crush proven in

photographs of the vehicle at issue.  They also contend that the testimony of

GM's corporate designee Mr. Cassatta during his deposition provides proof of

the Blazer's defective roof design as well as the existence of feasible alternative

designs that GM chose not to employ.  Plaintiffs assert that these facts can be

easily understood and interpreted by a layperson.  After reviewing these materials, the Court concludes that when presented with these facts, jurors could determine whether a design defect or a manufacturing defect existed in the Blazer's roof and that summary judgment would be inappropriate on this point.

Plaintiffs also argue that the seat belt defect is supported by evidence that a jury could easily understand.  Defendant does not contest that seat belts should not unlatch during a collision or rollover incident.  There is eyewitness testimony that Matthew Reynolds was wearing his seatbelt at the time of the accident, and there are also contradicting opinions as to whether certain marks on the seat belt show that it was in use at the time of the rollover incident.  After the incident, the seatbelt was not latched.  Since Dr. Benedict's testimony regarding inertial release will not be excluded, Plaintiffs present a viable theory of a seatbelt design defect that is amply supported by expert testimony.  Furthermore, the Court concludes that a jury could also infer from circumstantial evidence that there was a manufacturing defect in the passenger seatbelt.  Thus, summary judgment is inappropriate here as well.

26

### E.    Failure to Warn Claims

Defendant also moves for summary judgment based on Plaintiffs' alleged

failure to present evidence in support of their failure to warn claims.[7]  There are

two ways in which a plaintiff can prove negligent failure to warn.  <u>Rhodes v.

Interstate Battery Sys.</u>, 722 F2d 1517, 1519 (11th Cir. 1984).  First, the plaintiff

can show the manufacturer's "failure to take adequate measures to

communicate the warning to the ultimate user."  <u>Id.</u>  Or alternatively, the

plaintiff can show the manufacturer's "failure to provide a warning that, if

communicated, was adequate to apprise the user of the product's potential

risks."  <u>Id.</u>  With regard to the first method, the plaintiff's failure to read a

provided warning does not bar recovery since he or she is challenging the

adequacy of the manufacturer's efforts to communicate the warning.  <u>White v.

W.G.M. Safety Corp.</u>, 707 F.Supp. 544, 549 (S.D. Ga. 1988).  However with

---

[7]The Court notes Defendant's argument that Plaintiffs' Complaint only alleged
inadequate warnings of the Blazer's propensity to roll over.  However, the Complaint
also generally alleged all defect claims not yet known at the time (<u>See</u> Pl.'s Amended
Compl. Dkt. No. [84] at ¶ 11.), and a failure to warn claim is one of the three types of
defect claims.  Defendant has failed to cite any authority to convince the Court that the
Federal Rules require the high level specificity in pleading that the Defendant urges.
The Court concludes that the contents of the Complaint put Defendant on sufficient
notice of these claims.

regard to the second type of failure to warn claim, the plaintiff's failure to read a provided warning does bar recovery since the content of the warning would not be the proximate cause of the injuries suffered. Walker v. Merck & Co., 648 F.Supp. 931, 935-36 (M.D. Ga. 1986).

Here, Plaintiffs appear to challenge both the adequacy of GM's efforts to communicate warnings and the adequacy of the content of the warnings that were given. With regard to the adequacy of GM's efforts to warn users of the risks posed by the Blazer, Defendant argues that the warnings were prominently displayed both in the owner's manual and on the car itself. Plaintiff responds by pointing out that Mrs. Reynolds' inability to recall any of these warnings shows that GM's attempt to communicate the warnings was inadequate. Whether adequate efforts have been made to communicate a warning is a question uniformly held for the jury. Stapleton v. Kawasaki Heavy Indus., Inc., 608 F.2d 571, 573 (5th Cir. 1979). The Court concludes that there are issues of material fact to be resolved by a jury on this issue and that summary judgment is inappropriate.

On the other hand, the Court is inclined to grant summary judgment on Plaintiffs' claim challenging the adequacy of the content of the warnings. Mrs.

28

Reynolds admitted in her deposition that she had not read the warnings contained in the owner's manual and that she had not read the warning label affixed at the interface of the roof header and the windshield.[8]  (See Dep. of B. Reynolds at 47-48.)  Under Georgia law, this negates the causation element of a claim for inadequate warning.  See, e.g., Camden Oil Co. v. Jackson, 609 S.E.2d 356, 358-59 (Ga. Ct. App. 2004); Powell v. Harsco Corp., 433 S.E.2d at 608, 610 (Ga. Ct. App. 1993); Cobb Heating & Air Conditioning Co. v. Hertron Chem. Co., 229 S.E.2d 681, 682 (Ga. Ct. App. 1976).  Because Mrs. Reynolds did not read the warnings that GM provided, the Court finds as a matter of law that the content of the warnings was not the proximate cause of the injuries suffered in this case.  Therefore the Court concludes that summary judgment is appropriate here.

### F.    Punitive Damages

A recovery of punitive damages is authorized in any "tort action in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that

---

[8]While Plaintiffs contend that Mrs. Reynolds merely failed to recall the content of these warnings, her deposition shows that she does not recall reading the warnings at all.  (B. Reynolds Dep. at 47-48.)

entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b). "Specific intent to cause harm" is only relevant in those cases in which punitive damages are awarded in excess of $250,000.00. In cases in which "specific intent to cause harm" is shown, the $250,000.00 punitive damages cap does not apply. O.C.G.A. § 51-12-5.1(f).

First, Defendant argues that Plaintiffs have failed to produce credible evidence of Matthew Reynolds' consciousness of pain and suffering. Even without the testimony of Dr. Patricia Davis, Plaintiffs have presented evidence from which a jury could find that Matthew Reynolds was conscious of some pain and suffering following his injuries. Eyewitness reports describe Matthew Reynolds as flailing his limbs while being transported from the accident scene to the hospital. Also, Dr. Mary Elizabeth Lester testified about events recorded in the medical records that were indicative of some level of consciousness. The Court concludes that there is a genuine dispute of material fact on this issue to be determined by a jury.

Next, Defendant argues that Plaintiffs have failed to prove that GM's conduct in designing the Blazer rose to the level of willfulness required by the statute. But Plaintiffs have put forth evidence of GM's knowledge of certain

dangers inherent in the operation of the Blazer.  Plaintiffs provide evidence that GM knew of the Blazer's propensity to roll over by pointing to many rollover incidents that took place before the Reynolds' rollover incident.  Plaintiffs also show that GM knew of a possible defect in the Blazer's roof design by pointing to the testimony of Mr. Cassatta regarding GM's choice to use carbon-based steel with little or no bracing to support the Blazer's roof.

This same evidence precludes summary judgment in GM's favor based upon its compliance with federal safety standards.  Compliance with applicable safety regulations does not preclude an award of punitive damages where "there is other evidence showing culpable behavior."  General Motors Corp. v. Moseley, 447 S.E.2d 302, 311 (1994) abrogated on other grounds by Webster v. Boyett, 497 S.E.2d 459 (1998).  The Court concludes that there is a genuine dispute of material fact on this issue and that the question of whether Defendant's conduct rose to the level of conscious indifference should be left for a jury to determine.

### G.     Conclusion

In accordance with the Court's discussion above, Defendant's Motion for Summary Judgment [105] is hereby **GRANTED IN PART** and **DENIED IN**

**PART**.  The motion is granted as to all claims grounded on the theory of a defect in the Blazer's door and as to Plaintiffs' claim challenging the content of the warnings supplied by GM.  The motion is denied as to all other claims.

### Conclusion

Plaintiffs' Motion to Compel [96] is hereby **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' Motion in Limine [103] is hereby **DENIED**.

Defendant's Motion to Exclude the Opinions of Patricia Davis [104] is hereby **GRANTED IN PART** and **DENIED IN PART.**  Defendant's Motion to Exclude the Testimony of Charles Benedict [107] is hereby **DENIED**. Finally, Defendant's Motion for Summary Judgment [105] is hereby **GRANTED IN PART** and **DENIED IN PART**.

**SO ORDERED**, this  _28th_  day of September, 2007.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)